IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

<table>
<tr><td>

JACOB CALDWELL, individually and on
behalf of others similarly situated,

              Plaintiff,

v.

MERCURY MANAGEMENT LLC, et al.,

              Defendants.

</td><td>

Case No. 24-2210-DDC-RES

</td></tr>
</table>

## MEMORANDUM AND ORDER

This case's carts and horses are out of sequence. Plaintiff filed a Complaint (Doc. 1)—on behalf of himself and others similarly situated—alleging defendants had failed to pay overtime compensation correctly. Doc. 1 at 1 (Compl.). And he alleged the purported class was entitled to unpaid compensation and liquidated damages under the Fair Labor Standards Act (FLSA). *Id.* Now, the parties have resolved their dispute. And jointly they ask the court to approve their FLSA settlement, conditionally certify the collective action, approve the proposed notice to class members, and award attorneys' fees and litigation costs. *See generally* Doc. 22. But the parties' requested course of action puts the cart before the horse—they seek final approval of the settlement before the court has certified a collective action or approved the class notice.

Anticipating the problem, the court convened a status conference with the parties on May 6, 2025. Doc. 28. And the parties followed up with an Amended Joint Motion to Approve Settlement (Doc. 30). That motion again asked the court to approve the original Joint Motion (Doc. 22), arguing that its requests don't run afoul of the court's FLSA settlement approval

procedures.  Doc. 30 at 2.  Alternatively, the parties asked the court to approve a revised settlement process.  *Id.*

While the parties' proposed methodology is efficient, the court's procedure for approving FLSA settlements just doesn't allow it.  Below, the court explains its decision to deny the Joint Motion for Settlement Approval (Doc. 22) ("First Settlement Motion") and grant in part and deny in part the Amended Joint Motion for Settlement Approval (Doc. 30) ("Second Settlement Motion").  In so doing, the court conditionally certifies the class.  But this Order identifies issues preventing the court from granting the remaining aspects of the parties' Second Settlement Motion—preliminary settlement approval and settlement notice approval.  The court begins with a description of the case's background and the parties' two proposed settlement methods.

I.    **Background**

*Plaintiff's Employment*

Plaintiff worked as a non-exempt, hourly employee for Mercury Management from September 2022 to March 2024.  Doc. 1 at 4 (Compl. ¶ 16).  Mercury Management "is a rural broadband internet provider [who] also installs and maintains the equipment needed for its high-speed broadband and fiber internet."  Doc. 23 at 4.  Those employed as "Tower Technicians"—the employees relevant to this FLSA action—"install, maintain, and repair the equipment."  *Id.*  In performing these duties, Tower Technicians sometimes "must climb the company's towers[,]" which entitles them to a $5.00 per hour hazard pay bonus.  *Id.*  The parties describe those work duties as "Tower Hours."  *Id.*

When plaintiff worked overtime, he was entitled to wages at a rate of 1.5 times his regular rate of pay.  Doc. 1 at 5 (Compl. ¶ 21); 29 U.S.C. § 207(a)(1).  Plaintiff alleges defendants "failed to appropriately calculate the regular rate of pay for certain overtime hours" he had worked.  Doc. 23 at 2.  That's because, plaintiff emphasizes, defendants didn't

incorporate hazard pay and other non-discretionary remuneration into the base pay calculation. Doc. 1 at 7 (Compl. ¶ 28).  Defendants deny plaintiff's allegations.  Doc. 23 at 2.

### *Settlement Negotiations & Overtime Payment Calculations*

Plaintiff filed his Complaint challenging these issues on May 16, 2024.  Doc. 1 at 1 (Compl.).  Shortly thereafter, the parties began communicating about a potential settlement. Doc. 23 at 2.  The court stayed the proceedings—at the parties' request—in July 2024.  Doc. 14. From there, the parties reviewed time and payroll records for the 10 employees with the most Tower Hours, including plaintiff.  Doc. 23 at 3.  And plaintiff used those records to calculate "the potential unpaid overtime wages for the Named Plaintiff and the exemplar Tower Technicians[.]"  *Id.*  The parties then "exchanged their respective calculations of the additional overtime compensation potentially due to the Tower Technicians."  *Id.*  And after exchanging their calculations, the parties used a formula to estimate the overtime hours for the other 80 Tower Technicians.[1]  *Id.* at 5.  Ultimately, the parties calculated possible unpaid overtime pay and the requisite liquidated damages.  *Id.*

Based on these calculations, the parties negotiated a proposed settlement agreement.  *See id.* at 1.  They agreed to a class defined as:

> All Tower Technicians who were eligible for the $5.00 per hour of Hazard Pay and who worked overtime from May 1, 2022 to June 30, 2023.

Doc. 23 at 4; Doc. 30-1 at 2 (Am. Settlement Agreement).  The settlement agreement further proposes:

---

[1]    The parties calculated the 10 examplar Tower Technicians' overtime Tower Hours as a percentage of their total Tower Hours.  Doc. 23-2 at 4 (Milz Decl. ¶ 17).  The parties then estimated the remaining Tower Technicians' overtime Tower Hours by applying that percentage to each Tower Technician's total tower hours.  *Id.*  The parties then multiplied each employee's estimated overtime Tower Hours by $2.50 (50% of the hazard pay bonus)—the amount defendants arguably should've included in base pay.  *Id.*

- A total settlement amount of $40,747.78, comprising settlement payments to eligible employees and attorneys' fees and costs. Doc. 23 at 3. Requested attorneys' fees are $26,298.62 and costs are $3,701.38. *Id.* at 7.

- Defendant Mercury Management will pay the employer's portion of payroll taxes from outside the settlement amount. *Id.* at 3.

- Settlement payments include a calculation based on the employee's estimated overtime tower hours multiplied by $2.50, plus an equal amount of liquidated damages. *Id.* at 5.

- Tower Technicians whose overtime pay was equal to or less than $2.50 will receive a total payment of $5.00, accounting for wages and liquidated damages. *Id.*

As previewed above, the two pending motions take different approaches to distributing the settlement funds. The court outlines, below, the distribution method proposed by each settlement motion, in turn.

### *First Settlement Motion's One-Step Distribution Method*

First, the parties proposed a one-step distribution method. *See* Doc. 23. Under it, the parties will send eligible employees a notice of settlement and a settlement check after the court approves the settlement. *Id.* at 6. Eligible employees then would release their claims by signing and negotiating their checks. *Id.* at 6–7. Within 120 days of mailing the notices, the parties would file copies of all negotiated settlement checks with the court and seek final dismissal of the case with prejudice. *Id.* at 6.

### *Second Settlement Motion's Distribution Method*

The parties' Second Settlement Motion opted for a modified approach. *See* Doc. 30. Instead of sending the notice and settlement checks together, they proposed to secure, first, preliminary court approval of the settlement. *Id.* at 6. Then, the parties would mail the

4

settlement notice to eligible employees. *Id.* Employees then would return a Consent to Join Form within 60 days to opt in to the suit. *Id.* Within 14 days after the notice period expired, the parties would move for final approval of the settlement and distribution of settlement funds. *Id.* At that point, the parties would file the employees' Consent to Join Forms with the court. *Id.* Only after the court finally approves the settlement would the parties distribute the settlement funds to the collective. *Id.*

The court addresses each settlement motion below. But first, it describes the legal standard for FLSA settlement approval.

## II.    Legal Standard

"Congress enacted the FLSA in 1938 with the goal of protecting all covered workers from substandard wages and oppressive working hours." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012) (citation, quotation marks, and brackets omitted). Because the FLSA's "prime purpose" is "to aid the unprotected, unorganized and lowest paid of the nation's working population," *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945), parties must present settlement of FLSA claims to the court "for review and a determination that the settlement is fair and reasonable." *Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311-KHV, 2015 WL 4920292, at *3 (D. Kan. Aug. 18, 2015) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). To approve an FLSA settlement, the court must determine whether: "(1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned[,] and (3) the proposed settlement contains an award of reasonable attorney's fees." *Id.* at *5.

FLSA creates opt-in collective actions. To opt in, individuals must give their "consent in writing to become" a plaintiff and file that consent with the court. 29 U.S.C. § 216(b). Given

this requirement, the District of Kansas has a developed a procedure for approving FLSA settlements preliminarily.  It applies when potential opt-in plaintiffs haven't yet received notice and an opportunity to opt in at the time of settlement—so there's no collective action.  *Wisneski v. Belmont Mgmt. Co.*, No. 19-cv-2523-JAR, 2020 WL 3218199, at *2 (D. Kan. June 15, 2020).

This process begins with a motion to:  "(1) conditionally certify the proposed settlement class; (2) preliminarily approve the proposed settlement; and (3) approve a proposed notice to the putative class members."  *Id.* (quotation cleaned up).  After the court grants the motion (or motions), "a time period will begin for which putative class members can opt in to the lawsuit." *Id.*  After that period ends, "the parties again may move for final approval of the proposed settlement" and "the attorney's fee award[.]"  *Id.* (quotation cleaned up).

The parties' First Settlement Motion proposes a method falling outside this norm.  This abnormal distribution approach is inappropriate, as least in the way it operates here.

### III.    First Settlement Motion (Doc. 22)

As already explained, the court recited its reservations about the parties' proposed settlement distribution method during the May 6, 2025, status conference.  In their second motion, the parties again asked the court to approve their original settlement—reservations aside. Doc. 30 at 2.  They try to distinguish their one-step settlement from the one-step settlement this court rejected in *Shepheard v. Aramark Uniform & Career Apparel, LLC*, No. 15-7823-DDC-GEB, 2016 WL 5817074 (D. Kan. Oct. 5, 2016).  *Id.* at 3–5.  For reasons explained below, the court isn't persuaded.  While the court recognizes the parties' ingenuity—and the efficiency of the proposed distribution method—our procedure doesn't permit it.

The parties' proposed method creates concern in two distinct respects.  *First*, it doesn't follow the court's ordinary procedure for approving FLSA settlements because it requests final

settlement approval and collective action certification prematurely.  And *second*, once the parties execute the agreement, the collective action becomes moot.  The court explores these concerns, in turn, below.

###    A.    Premature Final Certification and Approval

The parties' first motion requests—in essence—final approval of the settlement.  While the parties never technically request "final" settlement approval, their motion functionally does so.  *See generally* Doc. 22; Doc. 23.  The parties don't suggest anywhere that the court's Order on the First Settlement Motion should approve the settlement only in a preliminary sense.  *See* Doc. 30 at 2–3 (distinguishing between "approving the terms of" the First Settlement Motion and "granting *preliminary* approval of the Amended Agreement" in the Second Settlement Motion (emphasis added)).  And they never suggest the parties would distribute the settlement funds before the court's finally approved the settlement.  What's more, the First Settlement Motion doesn't contemplate a later motion seeking final settlement approval.

The parties assert, instead, that they would file a "Joint Motion for Final Disposition" 120 days after mailing the notice to potential plaintiffs.  Doc. 23 at 6.  That motion would seek dismissal with prejudice and include signed settlement checks from those opting into the lawsuit. *Id.*  The parties argue this method complies with the FLSA because the "lawsuit would not be dismissed until *after* notice is sent to the Eligible Employees and their consents to join have been filed with the Court."  Doc. 30 at 4 (emphasis in original).  The parties also ask the court to certify the collective action finally.[2]  *See* Doc. 23 at 10 ("The Parties respectfully submit to the Court that these factors all favor certification of the collective, and therefore ask the Court to

---

[2]    Elsewhere, the parties state they seek just conditional certification of a collective action.  *See* Doc. 22 at 1; Doc. 30 at 6.  So, it's unclear whether the parties seek conditional or final collective action certification.

certify a final collective action[.]"); Doc. 30 at 4 ("[T]he Parties['] Joint Motion requested that the Court find that this case should be certified as a collective action.").  But remember, no one except Mr. Caldwell has opted-in to this case in writing.

What the parties' arguments miss is this:  the court can't approve the settlement finally until it's certified a collective action finally.  *Peterson v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2011 WL 3793963, at *4 (D. Kan. Aug. 25, 2011) ("The court must make some final class certification finding before it can approve a collective action settlement." (quotation cleaned up)); *Wisneski v. Belmont Mgmt. Co.*, No. 19-cv-2523-JAR, 2021 WL 1999094, at *1 (D. Kan. May 19, 2021) (similar).  And the court can't certify the collective action finally until multiple plaintiffs have opted in and the court has found those particular multiple plaintiffs similarly situated.  *See Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102–03 (10th Cir. 2001) (outlining two-step approach to collective action certification, requiring a "stricter standard" evaluating "the individual plaintiffs" at the second stage (quotation cleaned up)); *Peterson*, 2011 WL 3793963, at *4 (applying *Thiessen* to FLSA collective actions); *Lundine v. Gates Corp.*, No. 18-1235-EFM, 2019 WL 5267108, at *1 n.3 (D. Kan. Oct. 17, 2019) (same).

The parties' settlement distribution method doesn't abide this sequencing, even if they moved to dismiss only after filing the settlement checks with the court.  *See Prim v. Ensign United States Drilling, Inc.*, No. 15-cv-2156-PAB-KMT, 2018 WL 3729515, at *2 (D. Colo. Aug. 3, 2018) ("[F]ailure to provide putative class members with notice and an opportunity to opt in to the lawsuit before seeking final approval of the parties' proposed settlement undermines the Court's ability to evaluate the appropriateness of final certification, the fairness of the settlement agreement, and the reasonableness of the fee award agreed upon by the parties."); *Tommey v. Comput. Scis. Corp.*, No. 11-cv-2214-EFM, 2015 WL 1623025, at *1 (D. Kan. Apr.

13, 2015) ("[W]hen a hearing is not requested, the plaintiff, at the very least, must notify the court that the opt-in plaintiffs had notice of the settlement and an opportunity to object."); *Oates v. Kinder Morgan Energy Partners, L.P.*, No. CIV-19-1171-SLP, 2022 WL 18673322, at *3 (W.D. Okla. Jan. 18, 2022) (directing parties to file new motion for final certification and settlement approval after notice and opt-in period).

There's another reason why the court can't approve the First Settlement Motion:  it would moot the collective action before other plaintiffs had opted in.  Part B explains this shortcoming.

### B.    Mootness

Recall that a FLSA collective action only exists when more than one plaintiff "affirmatively opt[s] into the class" in writing.  *Seawell v. Konza Prairie Pizza, Inc.*, No. 20-CV-2130-JAR-KGG, 2021 WL 3771690, at *5 (D. Kan. Aug. 25, 2021) (internal quotation marks and citation omitted); 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any [FLSA collective] action unless he gives his consent in writing[.]").  So, satisfaction of the named plaintiff's claim before final certification moots the potential collective action.  *See Seawell*, 2021 WL 3771690, at *5 ("In the absence of any claimant's opting in, an FLSA lawsuit becomes moot when an individual's claim is satisfied[.]" (quotation cleaned up)).  "The mere presence of collective-action allegations cannot save the suit from mootness once the individual claim is satisfied."  *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 73 (2013) (quotation cleaned up).  That's so because the named plaintiff has no authority to settle claims for would-be plaintiffs who haven't yet opted in to the case.  *See Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 708 (11th Cir. 2014) ("In an FLSA action, unlike in a Rule 23 class action, a named plaintiff can represent others only when they affirmatively opt-in to the case."); *Copeland-Stewart v. N.Y. Life Ins. Co.*, No. 15-cv-159-T-23AEP, 2016 WL 231237, at *2 (M.D. Fla. Jan. 19, 2016)

("[Plaintiff] has no authority yet to settle the future opt-in plaintiffs' claims."); *Cerrato v. All. Material Handling, Inc.*, No. WDQ-13-2774, 2014 WL 1779823, at *2 (D. Md. Apr. 30, 2014) ("[T]he case would be moot once the court approved the settlement of the named plaintiff, and the plaintiff did not have authority to settle claims for plaintiffs who had not opted-in.").

So, settling all claims "before the representative plaintiff has any indication exactly what the claims are and how many others he will actually represent" puts "the proverbial cart before the horse." *Perez v. Avatar Props., Inc.*, No. 6:07-cv-792-Orl-28DAB, 2008 WL 4853642, at *4 (M.D. Fla. Nov. 6, 2008) (quotation cleaned up). At this moment, there aren't any other plaintiffs. It's just Mr. Caldwell. And, under the parties' proposed distribution method, no one else would have opted in until their negotiated settlement checks are filed with the court.

The parties anticipated the mootness issue but—in the court's view—didn't resolve it. They suggest their settlement is free of any mootness problem because the parties haven't executed the agreement yet. Doc. 30 at 4–5. The parties would do so only after the court approves the settlement and conditionally certifies the collective action. *Id.* The parties' settlement agreement stipulates they'll sign the document within 14 days after the court grants their motion. Doc. 23-1 at 5. But, if the court's already approved the settlement, Mr. Caldwell releases his claim on the Effective Date. *Id.* at 7 ("Upon the Effective Date, the Named Plaintiff and the Participating Plaintiffs . . . fully releases and discharges [Defendants.]"). The Effective Date is the date when the parties execute the Settlement Agreement. *Id.* at 3. So, Mr. Caldwell releases his claim when all the parties—including himself—have executed the agreement. Even if the court certifies the case conditionally as a collective action before the parties execute the agreement, "nothing in that ruling would preserve [the] suit from mootness." *Genesis Healthcare Corp.*, 569 U.S. at 75. Conditional certification of an FLSA case "does not produce

10

a class with an independent legal status or join additional parties to the action." *Id.* (quotation cleaned up). If the court has approved the settlement finally, and the parties executed the agreement, then Mr. Caldwell already would have settled his claim. And the possible collective action is moot.

The court must respectfully deny the parties' First Settlement Motion (Doc. 22). The procedure and mootness issues won't tolerate the parties' one-step settlement distribution method. The court remains cognizant of low opt-in rates in FLSA collective actions. *See* Doc. 30 at 5. And it commends the parties for suggesting a method that might mitigate that risk and efficiently resolve this lawsuit. But the court believes the law precludes it from adopting the partes' settlement approach.[3]

Now, the court addresses whether it can grant the parties' Second Settlement Motion (Doc. 30), which adjusts the settlement distribution approach.

## IV.    Second Settlement Motion (Doc. 30)

### A.    Corrected Settlement Method

The parties' alternative settlement approach doesn't present the same procedure or mootness concerns. It follows the court's standard method: first, move for conditional class certification, preliminary approval, and approval of the settlement notice; then, notify the putative collective and allow time for opt ins; and, finally, move for final class certification and

---

[3]    The parties cite out-of-circuit cases to support their one-step method. *See* Doc. 23 at 11 (first citing *Day v. NUCO2 Mgmt., LLC*, No. 18-cv-2088, 2018 WL 2473472, at *1 (N.D. Ill. May 18, 2018); then citing *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 15-cv-10447, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016); then citing *Castillo v. Noodles & Co.*, No. 16-cv-3036, 2016 WL 7451626, at *1 (N.D. Ill. Dec. 23, 2016); then citing *Prena v. BMO Fin. Corp.*, No. 15-C-9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015); and then citing *Risbrook v. Blue Horseshoe Network, LLC*, No. 19-11262, 2020 WL 13441574, at *3 (E.D. Mich. Sept. 4, 2020)). Those cases do little to resolve or even address the issues the court raises in this Order. And each case amounts to a final approval of the settlement. These decisions—all by district courts outside our Circuit—don't persuade. The court declines to stray from the procedures consistently used by our court.

11

settlement approval. *See Wisneski*, 2020 WL 3218199, at *2. The court now conditionally certifies the lawsuit as a collective action, but it can't approve the settlement preliminarily or approve the settlement notice on this record.[4]

### B.    Conditional Certification of Collective Action

"Section 216(b) of the FLSA provides for an opt-in [collective] action on behalf of employees who are 'similarly situated' to" plaintiff. *In re Bank of Am. Wage & Hour Emp. Litig.*, 286 F.R.D. 572, 576 (D. Kan. 2012). As described above, the Tenth Circuit has approved a two-step approach for certifying a collective action. *Thiessen*, 267 F.3d at 1102–03.

The first step requires the court to make an initial similarity determination at the notice stage, applying a relatively lenient standard. *Id.* at 1103. The first stage demands "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1102 (internal quotation marks and citation omitted). This notice-stage determination certifies the case as a collective action for purposes of sending the opt-in notice to potential class members. *Id.* The second stage, if necessary, requires a stricter standard for assessing whether plaintiffs are "similarly situated." *Id.* at 1102–03 (outlining several factors for final certification decision).

The parties contend the eligible employees all were "employed by Mercury as Tower Technicians, and each Technician performed the same primary job duty of installing, repairing, and maintaining equipment[.]" Doc. 23 at 9. Mercury compensated each technician similarly— including hourly rate and hazard pay bonuses—during the relevant time period. *Id.* The parties agree—for purposes of settlement—that defendants have no unique defenses against any

---

[4]    Because the parties' two settlement motions interact—and much of the substance is unchanged— the court incorporates the parties' arguments from the First Settlement Motion (Doc. 22) and its accompanying Memorandum (Doc. 23) when evaluating the settlement presented in the Second Settlement Motion (Doc. 30).

individual eligible employee. *Id.* The parties thus have asserted "substantial allegations" that the putative collective action members were victims of a single policy or plan. *Thiessen*, 267 F.3d at 1102. The court finds it appropriate to certify a collective action for the purpose of sending an opt-in notice to potential class members. But that's all the court can do now. On this record, the court neither can preliminarily approve the settlement nor approve the settlement notice. It explains those conclusions, below.

### C.    Preliminary Approval of Settlement

When parties settle FLSA claims, they must present the settlement to the court to decide whether the settlement is fair and reasonable. *Barbosa*, 2015 WL 4920292, at *3. The court may approve a proposed FLSA settlement if: "(1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned[,] and (3) the proposed settlement contains an award of reasonable attorneys' fees." *Id.* at *5. The parties haven't made this showing yet.

### 1.    Bona Fide Dispute

Before approving an FLSA settlement, the parties must submit sufficient information for the court to conclude that a bona fide dispute exists. *McCaffrey v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2011 WL 32436, at *4 (D. Kan. Jan. 5, 2011). To satisfy this obligation, the parties must provide the court with: (i) a description of the nature of the dispute; (ii) a description of the employer's business and the type of work performed by the employees; (iii) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (iv) the employees' justification for the disputed wages; and (v) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Id.*

The court concludes that the parties haven't submitted information sufficient for the court to find a bona fide dispute.  Each putative collective action member worked as a Tower Technician for Mercury.  Doc. 23 at 4.  Plaintiff alleges defendants failed to calculate properly the rate of pay for some overtime hours worked by plaintiff and other Tower Technicians.  *Id.* at 2.  According to plaintiff, defendants should've included hazard pay remuneration in the Tower Technicians' base pay rate.  Doc. 1 at 4–7.  As a result, plaintiff alleges certain overtime wages went unpaid.  *Id.* at 7.  Defendants deny plaintiff's allegations.  Doc. 23 at 2.  The parties disagree "whether a bonus payment for Hazard Pay while climbing towers of $5.00 per hour should have been included in [the Tower Technicians'] regular rate of pay for purposes of overtime compensation."  *Id.* at 2–3.  And the proposed notice explains defendants' assertion that "at all relevant times they have paid their employees properly."  Doc. 30-1 at 14.

But the court's not sure what defendants' theory is.  The parties agreed to settle before defendants filed an answer asserting any defenses.  *See* Doc. 23 at 2 ("Shortly after the Complaint was served, Defendant's Counsel reached out to Plaintiff's Counsel to . . . discuss a process to engage in settlement negotiations.").  And the parties' joint motions assert merely that defendants deny plaintiff's allegations and disagree whether defendants should have included hazard pay in the regular rate of pay for calculating overtime.  *See* Doc. 23 at 2–3.  That statement merely describes the general nature of the dispute.  The parties never explain *why* defendants believe hazard pay wasn't part of the regular rate of pay.  And they never identify any other defenses.  Without more, the court can't conclude the parties have shown a bona fide dispute based on the factors outlined in *McCaffrey*.  *See Grove v. ZW Tech, Inc.*, No. 11-2445-KHV, 2012 WL 1789100, at *4–5 (D. Kan. May 17, 2012) (concluding court couldn't "determine whether a bona fide dispute exists" because parties didn't provide information about

"the reasons why defendant" disputed entitlement to unpaid wages, among other *McCaffrey* factors); *Foster v. Robert Brogden's Olathe Buick GMC, Inc.*, No. 17-2095-DDC-JPO, 2018 WL 3633891, at *1, *3 (D. Kan. July 31, 2018) (concluding that parties who had discussed plaintiff's legal theory and defendant denied the allegations had "described the nature of the dispute generally[,]" but not provided enough information for court to conclude bona fide dispute existed).  On next to the second preliminary approval prong:  whether the parties have agreed to a fair and reasonable settlement.

### 2.    Fair and Reasonable

To qualify as "fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales."  *Solis v. Top Brass, Inc.*, No. 14-cv-00219-KMT, 2014 WL 4357486, at *3 (D. Colo. Sept. 3, 2014).  To determine if the proposed settlement is fair and reasonable, courts regularly examine the same factors that apply to proposed class action settlements under Rule 23(e).  *Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311-KHV, 2014 WL 5099423, at *7 (D. Kan. Oct. 10, 2014).  Those factors include:

> (1) whether the proposed settlement has been fairly and honestly negotiated, (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt, (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation[,] and (4) the judgment of the parties that the settlement is fair and reasonable.

*Id.*  As our court recognizes, these factors may demonstrate that a settlement agreement is fair and reasonable, but they are not determinative.  *See McCaffrey*, 2011 WL 32436, at *5 (explaining that the Rule 23(e) factors "provide a general framework for the Court's determination whether an FLSA settlement is fair, but they are not determinative").  In addition to the factors listed, the court must determine "that the proposed settlement is fair and equitable

15

to all parties in light of the history and policy of the FLSA." *Gambrell v. Weber Carpet, Inc.*, No. 10-2131-KHV, 2012 WL 5306273, at *5 (D. Kan. Oct. 29, 2012).

*First*, consider whether the proposed settlement was negotiated fairly and honestly. Our court has concluded that a proposed settlement is fairly and honestly negotiated when "the [a]greement represent[ed] the cooperative and good faith result" of arm's-length negotiation by skilled counsel. *Jackson v. Ash*, No. 13-2504-EFM-JPO, 2015 WL 751835, at *2 (D. Kan. Feb. 23, 2015) (evaluating Rule 23 class action). The parties attest they have reached a settlement after arm's-length negotiations and "careful pre-suit investigation[.]" Doc. 23 at 8. It appears that counsel are qualified practitioners. And their settlement discussions spanned several months. *See* Doc. 23-2 at 2–4 (Milz Decl. ¶¶ 8–19). This first factor thus suggests a fair and reasonable settlement.

*Second*, evaluate whether serious questions of law and fact exist and place the litigation's outcome in doubt. The court concluded above that the parties hadn't shown a bona fide dispute. That's because the parties haven't provided enough information about defendants' legal theory or fact-based defenses. Just like the bona fide dispute question, the court's unsure whether the outcome of the litigation is in doubt or if any questions of law and fact exist. The parties' showing, so far, does not discharge the serious questions of law or fact factor.

*Third*, assess whether the value of immediate recovery outweighs the possibility of future relief after protracted litigation. The parties describe in detail the method of calculating the alleged unpaid overtime wages based on a sampling of the 10 Tower Technicians with the most hours qualifying for hazard pay. Doc. 23 at 4–5, 8. After approximating the unpaid overtime for the remaining Tower Technicians, defendants agreed to pay the entire amount of the calculation. *Id.* at 8. And defendants agreed to pay liquidated damages equal to the amount of unpaid

16

overtime wages. *Id.*; 26 U.S.C. § 216(b) (employer who violates § 207 "shall be liable to the employee or employees affected in the amount of their unpaid [wages] . . . and in an additional equal amount as liquidated damages"). This method suggests that the immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.

*Last*, the parties' joint motion attests that this settlement is fair and reasonable. Doc. 23 at 8. And the court should "hesitate to substitute its own judgment for that of counsel[.]" *Lengel v. HomeAdvisor, Inc.*, No. CV 15-2198-KHV, 2017 WL 364582, at *8 (D. Kan. Jan. 25, 2017) (quotation cleaned up). The court considers the parties' judgment of the settlement's fairness.

But the court "must undertake an independent analysis of the evidence before it to reach its conclusion." *Jackson*, 2015 WL 751835, at *2 (quotation cleaned up). And the parties haven't provided enough evidence for the court to determine whether the proposed settlement satisfies the second factor—serious questions of law and fact. The court thus can't conclude the proposed settlement is fair and reasonable. Next, the court evaluates the final preliminary approval prong: attorneys' fees.

### 3.    Reasonable Attorneys' Fees

A settlement of FLSA claims must include an award of reasonable attorneys' fees and the costs of the action. 29 U.S.C. § 216(b); *see also McCaffrey*, 2011 WL 32436, at *2. The court has discretion to determine the amount and reasonableness of the fee, but the FLSA fee award nevertheless is mandatory. *Barbosa*, 2015 WL 4920292, at *4.

The Tenth Circuit applies a hybrid approach when deciding whether a requested fee award is reasonable—combining the percentage fee method with the specific factors traditionally used to calculate the lodestar. *Id.* at *7. When applying the percentage fee method, the court must find that the award is "reasonable and . . . must articulate specific reasons for fee awards

demonstrating the reasonableness of the percentage and thus the reasonableness of the fee award." *McCaffrey*, 2011 WL 32436, at *5 (citing *Brown v. Phillips Petrol. Co.*, 838 F.2d 451, 454 (10th Cir. 1988)).  The hybrid approach also requires the court to consider the lodestar amount, "which represents the number of hours reasonably expended multiplied by a reasonable hourly rate." *Solis*, 2014 WL 4357486, at *4 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (further citation omitted)); *see also Hobbs v. Tandem Env't Sols., Inc.*, No. 10-1204-KHV, 2012 WL 4747166, at *3 (D. Kan. Oct. 4, 2012) (similar).  Also, the court considers the 12 factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).  *See Hobbs*, 2012 WL 4747166, at *3.  Those factors are:

> (1) time and labor required, (2) novelty and difficulty of the questions presented by the case, (3) skill requisite to perform the legal service properly, (4) preclusion of other employment by the attorneys due to acceptance of the case, (5) customary fee, (6) whether the fee is fixed or contingent, (7) any time limitations imposed by the client or circumstances, (8) amount involved and results obtained, (9) experience, reputation, and ability of the attorneys, (10) "undesirability" of the case, (11) nature and length of the professional relationship with the client and (12) awards in similar cases.

*Id.* at *4 (first citing *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995); and then citing *Johnson*, 488 F.2d at 717–19).

Because the parties here haven't shown the settlement is a fair and reasonable resolution of a bona fide dispute, the request for attorneys' fees and costs is premature.  So, the court declines to evaluate the propriety of the proposed fee.  But it's important to note that the parties' agreed fee figure is 64% of the total settlement amount of $40,747.78.  That's well above the norm in FLSA cases.  *See Elston v. Horizon Global Ams., Inc.*, No. 19-2070-KHV, 2020 WL 6318660, at *7 (D. Kan. Oct. 28, 2020) ("Attorneys' fees of one-third or thereabouts are generally deemed reasonable." (quotation cleaned up)).  The court thus urges the parties, if they

18

choose to file a renewed motion, to provide their detailed analysis of the proposed fee in light of

the Tenth Circuit's hybrid approach.  That information will permit the court to assess the

propriety of the proposed fee award.

On this record, the court can't approve the settlement preliminarily.

### D.    Approval of Settlement Notice

The Second Settlement Motion also asks the court to approve the notice of settlement.

Doc. 30 at 6.  The parties' Settlement Agreement proposes mailing notice to eligible employees,

with a follow-up process for employees whose notice is returned as undeliverable.  *See* Doc. 30-

1 at 6.  This court has found notice sufficient when it explained:

> (1) the terms of the settlement; (2) how to participate in the settlement; (3) the
> individual amount that the individual plaintiff would receive; (4) the tax
> consequences of the amount received; (5) how to object to the settlement; and (6)
> how to contact plaintiffs' counsel should the individual have questions or seek
> additional information.

*Koehler v. Freightquote.com, Inc.*, No. 12-2505-DDC-GLR, 2016 WL 1403730, at *8 (D. Kan.

Apr. 11, 2016).

The court has reviewed the proposed notice, but concludes it isn't sufficient.  To be sure,

the proposed notice describes the terms of the settlement and how to opt-in to it.  *See* Doc. 30-1

at 15, 16.  Also, it provides a spot where counsel will describe each individual plaintiff's

settlement payment.  *Id.* at 15.  The notice also provides information about tax consequences.  *Id.*

And the notice states contact information for plaintiff's counsel.  *Id.* at 16.  So, the parties'

proposed notice includes many of the things listed above.  But the proposed notice omits an

important one:  it never explains how opt-in plaintiffs may object to the settlement (or the

timeframe for doing so).

A fairness hearing is not mandatory in FLSA cases, so long as any opt-in plaintiffs have

received notice and an opportunity to object.  *Tommey*, 2015 WL 1623025, at *1 ("[W]hen a

hearing is not requested, the plaintiff, at the very least, must notify the court that the opt-in plaintiffs had notice of the settlement and an opportunity to object.").  The court thus declines to approve this proposed notice that doesn't provide an objection opportunity.  *See Lundine v. Gates Corp.*, No. 18-1235-JPO, 2021 WL 2228504, at *1 (D. Kan. May 11, 2021) (rejecting proposed notice in motion for preliminary FLSA settlement approval and explaining "[c]lass members are entitled to a new notice informing them of their right to object to the settlement terms and attend a fairness hearing"); *Oates v. Kinder Morgan Energy Partners, L.P.*, No. CIV-19-1171-SLP, 2023 WL 1954661, at *1 (W.D. Okla. Jan. 25, 2023) (emphasizing that declining to opt-in doesn't diminish "separate right of an opt-in plaintiff to object to the terms of any proposed settlement" and requiring parties to amend notice accordingly).  The court won't approve the notice unless the parties provide an opportunity for opt-in plaintiffs to object to the settlement terms.  And the parties must remove any indication that the court has approved the settlement already.

## V.    Conclusion

The parties try to distinguish this settlement from similar—but rejected—settlements. But the court remains unpersuaded and thus denies the First Settlement Motion.  The parties' proposed one-step distribution method falls outside the procedure approved in this court's extensive jurisprudence.  And it risks mooting the lawsuit before other plaintiffs join the collective.  The court also grants in part and denies in part the Second Settlement Motion.  The court grants the motion to the extent it seeks conditional certification of a collective action.  It denies the motion in all other respects.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the parties' Joint Motion to Approve Settlement, Conditionally Certify Collective Action, Notice of Collective Action Settlement, and Award of Attorneys' Fees and Costs (Doc. 22) is denied.

**IT IS FURTHER ORDERED THAT** the parties' Amended Joint Motion to Approve Settlement, Conditionally Certify Collective Action, Notice of Collective Action Settlement, and Award of Attorneys' Fees and Costs (Doc. 30) is granted in part and denied in part—as set forth in this Order—without prejudice to refiling.

**IT IS FURTHER ORDERED THAT** this case is certified conditionally as a collective action for settlement purposes.

**IT IS FURTHER ORDERED THAT** the parties must notify the court on or before August 14, 2025, of their intention either to: (1) file a revised notice and renewed motion; or (2) abandon settlement and proceed to litigate this dispute. If the parties wish to file a renewed motion and supporting documentation, they may include with it any proposed deadlines for continuing this cause.

**IT IS SO ORDERED.**

**Dated this 15th day of July, 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**