IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| JACOB CALDWELL, individually and on behalf of all others similarly situated, | Case No. 24-2210-DDC-RES |
| Plaintiff, | |
| v. | |
| MERCURY MANAGEMENT LLC, et al., | |
| Defendants. | |

MEMORANDUM AND ORDER

The parties jointly seek the court's preliminary approval of their settlement in this Fair Labor Standards Act case. The court previously declined to lend its preliminary approval to the proposed FLSA settlement because the parties had placed the cart before the horse and left critical details unexplained. *See generally* Doc. 31.[1] Now, the parties have put their cart and their horse in the right sequence. And they've explained those critical details. The court thus grants their joint motion for preliminary approval of their settlement and preliminarily approves the attorneys' fees and costs. The court also approves the parties' proposed notice—but with a caveat. The court explains these conclusions—and the caveat—below.

Our court uses a three-step process for preliminary approval of FLSA settlements. The first step is a motion like the one the parties have filed here. The motion seeks to accomplish three things: "(1) conditionally certify the proposed settlement class; (2) preliminarily approve

---

[1]    The court assumes the reader's familiarity with that prior Memorandum and Order (Doc. 31) and incorporates it here by reference.

the proposed settlement; and (3) approve a proposed notice to the putative class members."
*Wisneski v. Belmont Mgmt. Co.*, No. 19-CV-2523-JAR, 2020 WL 3218199, at *2 (D. Kan. June 15, 2020) (quotation cleaned up).  Because the court conditionally certified the proposed settlement class in its earlier order, Doc. 31 at 21, it only addresses the proposed settlement and proposed notice here.

Start with the proposed settlement.  To approve the proposed settlement, the court must evaluate whether "(1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned and (3) the proposed settlement contains an award of reasonable attorneys' fees."  *Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311-KHV, 2015 WL 4920292, at *5 (D. Kan. Aug. 18, 2015).  Previously, the parties faltered at steps one and two because, in a nutshell, the court couldn't discern defendants' defense.  So, it couldn't tell whether this litigation (1) involved a bona fide dispute that (2) the settlement resolved fairly and equitably.  The court evaluates those two issues together, below.  Then, it concludes with the third issue, attorneys' fees.

The parties have clarified their dispute and the dispute's resolution.  In the Complaint, plaintiff alleged that defendants had "failed to incorporate hazard pay and other non-discretionary remuneration into their hourly employees' regularly hourly rate calculation[.]"  Doc. 1 at 7 (Compl. ¶ 28).  Plaintiff also brought the claim on behalf of all "current and former hourly employees[.]"  *Id.* at 9 (Compl. ¶ 37).  Plaintiff alleged that defendants' "hourly employees are working overtime without being paid the statutorily required rates."  *Id.* at 11 (Compl. ¶ 50).

The parties' settlement talks produced agreement:  when calculating overtime pay for Tower Technicians, defendant Mercury Management LLC should've included hazard pay—a

form of nondiscretionary remuneration—in the rate of regular pay.  Doc. 32-5 at 2 (Coffey Decl. ¶ 5).  Mercury disputed, however, whether hourly employees (other than Tower Technicians) received hazard pay.  *Id.*  Mercury also disputed that, beyond hazard pay, it didn't need to include any other nondiscretionary remuneration when calculating its employees' regular rate of pay.  *Id.*  The parties thus whittled plaintiff's claims down to Tower Technicians only, and further whittled the claims down to overtime that those technicians worked between May 1, 2022 and June 30, 2023—when Mercury ceased paying hazard pay.  *Id.*  Following this compromise, defendants agreed to pay the Tower Technicians $10,747.78, an expert-calculated figure which represents "100% of the overtime pay for the hazard pay plus 100% of the liquidated damages." *Id.* (Coffey Decl. ¶ 7).

The court preliminarily finds that this is a fair and reasonable resolution of a bona fide dispute.  The parties were represented by counsel.  *See Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010) ("If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable." (quotation cleaned up)).  The settlement is fair to plaintiff and other similarly situated employees because they will receive 100% of the overtime pay and liquid damages owed.  *See Roman v. FSC Clearwater, LLC*, No. 16-969-Orl-41DCI, 2017 WL 1653571, at *3 (M.D. Fla. Apr. 21, 2017) ("When, as in this case, a plaintiff does not compromise his or her claim, the resulting settlement is a fair and reasonable resolution of a bona fide dispute under the FLSA."), *report and recommendation adopted*, 2017 WL 1552304 (M.D. Fla. May 1, 2017).  And the settlement won't compromise the FLSA's noble purpose because it doesn't allow Mercury a discount on FLSA wages.  *See Dees*, 706 F. Supp. 2d at 1241–42 (warning courts to scrutinize FLSA settlements for a bona fide dispute because "implementation of the FLSA is frustrated if an

employer can extract a disproportionate discount on FLSA wages in exchange for an attenuated defense to payment."). The parties thus have resolved the deficiencies identified in the court's prior order, and the court can conclude preliminarily that the settlement fairly and reasonably resolves a bona fide dispute.

The court now considers whether the settlement requests reasonable attorneys' fees and costs. Under the settlement, defendants will pay $30,000 in attorney fees and costs—separate from the amount paid to the Tower Technicians. Doc. 32-1 at 6; Doc. 32-5 at 3 (Coffey Decl. ¶ 8). The parties previously represented that plaintiff's attorneys had spent 67[2] hours working on the case, and incurred litigation expenses of $3,701.38. Doc. 23-2 at 6–7 (Milz Decl. ¶¶ 33, 36). That means $26,298.62 of the request represents legal fees, so plaintiff's counsel is receiving $392.52 per hour. This rate is less than other hourly rates that our court has approved in FLSA cases involving counsel with similar experience. *See Florece v. Jose Pepper's Rests., LLC*, No. 20-2339-ADM, 2021 WL 5042715, at *7 (D. Kan. Oct. 29, 2021) (approving $575 and $475 hourly rates in FLSA case); *see also Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386, at *7 (D. Kan. Jan. 3, 2017) (approving hourly rates of $600, $450, and $400 in an FLSA settlement even "though on the high end of the approvable range"); *Bruner v. Sprint/United Mgmt. Co.*, No. 07-2164-KHV, 2009 WL 2058762, at *10 (D. Kan. July 14, 2009) (awarding plaintiffs' counsel a "generous" fee award in an FLSA settlement using an hourly rate of $590.91). And so, the court preliminarily approves the proposed attorney fees.

---

[2]    The Milz Declaration incorrectly totals the hours devoted to this case. Doc. 23-2 at 6 (Milz Decl. ¶ 33). It counts 61 instead of 67. Though the court concludes that this error is minor enough that it still can approve the settlement preliminarily, the court encourages plaintiff's counsel to submit actual time records when moving for final certification of the settlement. They'll resolve this dissonance.

With the settlement declared—preliminarily—a fair and reasonable resolution of a bona fide dispute that includes reasonable attorney fees, the court preliminarily approves the settlement. This conclusion leaves just one more matter: notice.

In its previous Order, the court found the parties' proposed notice insufficient because it: (1) failed to explain how opt-in plaintiffs may object to the settlement; (2) failed to provide a timeline for opt-in plaintiffs to object; and (3) indicated that the court had approved the settlement already. Doc. 31 at 19–20. In response to these concerns, the parties added a section to the Notice titled "How do I tell the Court that I do not like the settlement?" that explains how opt-in plaintiffs can object. Doc. 32-3 at 3. The Notice also provides that opt-in plaintiffs should postmark their objections no later than 60 days after mailing. *Id.* So, the parties have resolved two of the court's concerns. But they stumble at the third.

On page two, the Notice provides: "The Court has entered an Order preliminarily approving the parties' Collective Action Settlement Agreement and Release of Claims[.]" Doc. 32-3 at 2. Later on page two, however, the Notice says that the total settlement amount "was approved by the Court[.]" *Id.* And on page four, the nNtice says: "The Court has approved the settlement reached in this case[.]" *Id.* at 4. As a result, the Notice now contains contradictory statements about the court's view of the settlement. This is unideal. Suggesting that the court has approved the settlement—it has not—could deter opt-in plaintiffs from objecting. Nevertheless, the court concludes that counsel's oversight shouldn't delay this settlement any longer. *See Kastel v. Cascade Living Grp. Mgmt., LLC*, No. 23-00684-JCC, 2024 WL 3565771, at *2 (W.D. Wash. July 29, 2024) (authorizing dissemination of notice and allowing parties to make non-substantive changes to the proposed notice).

To resolve this issue, the court approves the Notice and orders counsel to file jointly a corrected notice within seven days of this Memorandum and Order. That corrected notice should fix the following errors:

- On the first bullet point on page two, rewrite the third sentence to say: "The Court has entered an Order preliminarily approving the parties' Collective Action Settlement Agreement and Release of Claims (the 'Agreement'), including these payments (the 'Preliminary Approval Order')."

- On the second bullet point on page two, remove the word "Western"—there is no Western District of Kansas.

- On page two, section 2, rewrite the first sentence to say: "The total settlement amount of $40,747.78 was preliminarily approved by the Court and is being allocated as follows:"

- On page four, section 8, rewrite the third sentence to say: "The Court has preliminarily approved the settlement reached in this case, and under the terms of the settlement, all Eligible Employees who participate in the settlement will be bound by the Release."

- On page five, again remove the word "Western."

Again, the parties must file a corrected notice within seven days. And, of course, the corrected notice is the one that the parties should disseminate.

To sum up, the court preliminarily approves the parties' settlement; preliminarily approves the attorney fees and costs; and approves the amended notice. It thus grants the Second Amended Joint Motion to Approve Settlement, Notice of Collective Action Settlement and Award of Attorneys' Fees and Costs (Doc. 32).

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Second Amended Joint Motion to Approve Settlement, Notice of Collective Action Settlement and Award of Attorneys' Fees and Costs (Doc. 32) is granted.

**IT IS FURTHER ORDERED THAT** the parties must file a corrected notice within seven days of this Memorandum and Order.

6

**IT IS SO ORDERED.**

**Dated this 27th day of March, 2026, at Kansas City, Kansas.**

<u>**s/ Daniel D. Crabtree**</u>
**Daniel D. Crabtree**
**United States District Judge**